## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| TRICIA HAZLETT | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 17- |
| SELECT PORTFOLIO SERVICING, INC. | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, | ) | |
| SUCCESSOR IN INTEREST TO BANK OF AMERICA, | ) | |
| NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER | ) | |
| TO LASALLE BANK NATIONAL ASSOCIATION, AS | ) | |
| TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS | ) | |
| MORTGAGE FUNDING TRUST 2006-SL1, MORTGAGE | ) | |
| BACK CERTIFICATES, SERIES 2006-SL1 | ) | |
| | ) | |
| DEFENDANT | ) | |

## COMPLAINT

## REQUEST FOR JURY TRIAL

### INTRODUCTION

This is an action for actual, statutory and punitive damages, costs and attorney's fees brought by the plaintiff, Tricia Hazlett, for violation of (a) the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. § 524 and (b) the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq. and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 et seq.

### JURISDICTION

1. The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and §1367. Venue is proper as all relevant events occurred in this District and Defendants were doing business in Maine during all relevant times.

## PARTIES

2.  Plaintiff Tricia Hazlett is a natural person and resident of the State of Maine. She is a "consumer" as defined by 32 M.R.S.A. §11002(3), and 15 USC 1692a(3).

3.  As detailed in this Complaint, Select Portfolio Servicing, Inc. ("SPS"), on behalf of U.S. Bank National Association as Trustee, successor in interest to Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Mortgage Funding Trust 2006-SL1, Mortgage Back Certificates, Series 2006-SL1 ("U.S. Bank"), has repeatedly alleged Ms. Hazlett is obligated to pay a second mortgage on her property to retain her home.

4.  Upon information and belief, SPS is a real estate loan servicer doing business in the State of Maine.

5.  SPS was, and continues to allege to be, the loan servicer of Ms. Hazlett's second mortgage, number ending in 8992.

6.  SPS began servicing the loan when it was in default and/or it treated the loan as in default when it began servicing of the loan.

7.  SPS engages in the business of collecting debts in this state.

8.  The collection of any debts is the principal purpose of SPS's business.

9.  SPS engages in the collection of debts using the mails and/or the telephone.

10. SPS regularly collects or attempts to collect debts alleged to be due another.

11. SPS is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §1692a(6), 32 M.R.S.A. §§11002(6) and 11003(7)(C).

12. Upon information and belief, U.S. Bank is the owner and/or holder of the subject loan serviced by SPS.

13. SPS services the subject loan on behalf of, under the authority and control of and at the direction of U.S. Bank.

14. U.S. Bank has is a national banking association with its principal place of business in Minneapolis, Minnesota.

**FACTS**

15. On September 12, 2011, Tricia Hazlett filed a chapter 13 bankruptcy, number 11-21333, in the US Bankruptcy Court, District of Maine. A true and accurate copy of the Notice of Meeting of Creditors and service list is attached hereto as Exhibit 1.

16. EMC Mortgage received notice of Ms. Hazlett's bankruptcy filing. *Id.*

17. Ms. Hazlett's primary purpose of filing a chapter 13 bankruptcy was to save her home located at 2507 Sanford Rd., Wells, Maine 04090.

18. At the time she filed for bankruptcy, Ms. Hazlett was a single mother raising her 13 year old Sam who had grown up in the home and attended schools in the area. She did not was to displace and disrupt his life by losing the home.

19. After years of submitting documents over and over, Ms. Hazlett was able to obtain a modification on the first mortgage. She then filed the bankruptcy to strip off the second mortgage.

20. In her Plan filed September 9, 2011, Ms. Hazlett listed the second mortgage on the property serviced by EMC Mortgage, as acquired by Chase Bank, N.A. ("EMC") as unsecured and stated it would be stripped off the property and discharged. A true and accurate copy of the filed Plan and proof of service is attached hereto as Exhibit 2.

21. On November 30, 2011, through counsel, U.S. Bank objected to the second mortgage being crammed down or stripped off in Ms. Hazlett's chapter 13 Plan.  A true and accurate copy of the Objection is attached hereto as Exhibit 3.

22. Attorney Leonard Morley for Shapiro and Morley entered his appearance as counsel for U.S. Bank on November 30, 2011.

23. An Interim Order confirming the Plan was entered on December 14, 2011.   A true and accurate copy of the filed Order Confirming the Plan and proof of service including to EMC and counsel for U.S. Bank  is attached hereto as Exhibit 4.

24. The mortgage serviced by EMC was owned by U.S. Bank A true and accurate copy of the filed Proof of Claim for the loan is attached hereto as Exhibit 5.

25. Ms. Hazlett filed a Motion to Allow and Disallow Claims, of which EMC and US Bank received a copy. A true and accurate copy of the Motion and certificate of service is attached hereto as Exhibit 6.  EMC and U.S. Bank received notice of the Motion. Attached to the Motion was a proposed Order Avoiding Lien on Real Property for the second mortgage.  *Id.*

26. The Court granted Ms. Hazlett's Motion to Allow and Disallow Claims on July 6, 2012 which allowed the claim held by U.S. Bank and serviced by EMC to be discharged upon the Debtor's receipt of a discharge of the bankruptcy.   EMC and U.S. Bank received the Order.  A true and accurate copy of the filed Order and proof of service is attached hereto as Exhibit 7.

27. On July 27, 2016, the Court entered an Order Avoiding Lien on Real Property which avoided and discharged the lien for the second mortgage. JP Morgan Chase and U.S.

Bank received the Order. .  A true and accurate copy of the Order and proof of service is attached hereto as Exhibit 8.

28. On August 12, 2016, the Order Avoiding Lien on Real Property was recorded in the York County Registry of Deeds, BK 17297 PGS 365-365.  A true and accurate copy of the recorded Order is attached hereto as Exhibit 9.

29. After five long years, Ms. Hazlett completed her bankruptcy Plan and on September 12, 2016, the Court entered an Order on Motion for Discharge of Individual Debtor Upon Completion of Plan.   A true and accurate copy of the filed Order and proof of service showing service to U.S. Bank and JP Morgan Chase is attached hereto as Exhibit10.

30. The Order of Discharge entered September 12, 2016.  U.S. Bank and EMC received notice of the Order of Discharge.  A true and accurate copy of the Order and proof of service is attached hereto as Exhibit 11.

31. Ms. Hazlett was thrilled.  She called her mother and sister and they all cried from relief knowing that she had completed the bankruptcy and her home was safe.  She was thrilled to know the whole process was over and she and her son would keep their home.

32. Four days later, in a letter dated September 16, 2016 directly to Ms. Hazlett, Chase notified her that the servicing of "the mortgage loan" would transfer to from JP Morgan Chase Bank, N.A. to SPS effective 10/1/2016. She was told that SPS would "collect and process your payments…"  A true and accurate copy of the letter is attached hereto as Exhibit 12.

33. SPS delivered a similar letter dated September 28, 2016 directly to Ms. Hazlett stating that SPS would service the loan as of October 1, 2016.  SPS stated that she should begin

sending her payments to SPS.  A true and accurate copy of the letter is attached hereto as Exhibit 13.

34. When SPS took on servicing of the loan, upon information and belief, they received notice of Ms. Hazlett's bankruptcy.

35. In a letter dated October 12, 2016, SPS sent a letter directly to Ms. Hazlett stating "the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property."  A true and accurate copy of the letter and proof of service is attached hereto as Exhibit14.

36. On or around October 27, 2016, Ms. Hazlett called SPS to ask why they were sending her letters about the loan.  SPS asked her what her intentions were with her home because they were going to place her in foreclosure.

37. On October 27, 2016, SPS received a Notice of Error and Discharge Injunction Violation letter delivered by Ms. Hazlett, through counsel, informing SPS of the bankruptcy discharge and providing a copy of the Order.  Ms. Hazlett also explained that the mortgage lien was avoided by the Court and provided the book and page as to where the Order was recorded in the York County Registry of Deeds.  A true and accurate copy of the letter and proof of receipt is attached hereto as Exhibit 15.

38. In a letter dated October 31, 2016 to counsel for Ms. Hazlett, SPS acknowledged receipt of the October 26, 2016 letter and stated they would have a response on 30 days of receipt of the letter on October 27, 2016.  A true and accurate copy of the letter is attached hereto as Exhibit 16.

39. On November 14, 2016, SPS delivered a mortgage statement directly to Ms. Hazlett stating an outstanding principal balance of $64,823.54 with a payment coupon attached. A true and accurate copy of the statement is attached hereto as Exhibit 17.

40. In a letter dated November 18, 2016 from SPS to counsel for Ms. Hazlett, SPS asked for another 15 days to research the issues identified in the October 26, 2017 letter. A true and accurate copy of the letter and proof of service is attached hereto as Exhibit 18.

41. In a letter dated November 25, 2016 from SPS to counsel for Ms. Hazlett, SPS stated that "even though your personal liability on the note may be discharged…the terms of the mortgage remain in effect. The owner of the mortgage, as lien holder, continues to have a lien on the real property." SPS include a list of option for Ms. Hazlett including a loan modification to bring the loan current and provide "an affordable monthly payment," a repayment plan to "resume monthly payments…," and a short payoff of the "existing mortgage balance." A true and accurate copy of the letter is attached hereto as Exhibit 19.

42. In a mortgage statement dated December 15, 2016, SPS alleged an "outstanding principal" balance of $64,823.54. A monthly payment coupon was included. A true and accurate copy of the letter is attached hereto as Exhibit 20.

43. In a mortgage statement dated January 13, 2017, SPS alleged an "outstanding principal" balance of $64,823.54. A monthly payment coupon was included. A true and accurate copy of the statement is attached hereto as Exhibit 21.

44. On January 20, 2017, Ms. Hazlett, through counsel, sent a second letter outlining the bankruptcy, discharge, lien avoidance, and errors in misrepresenting the status of and amounts owed on the mortgage. A true and accurate copy of the letter and proof of service is attached hereto as Exhibit 22.

45. In a letter dated January 27, 2017, SPS acknowledged receipt of the January 20, 2017 letter and said they would provide a written response and resolution within 30 days.  A true and accurate copy of the letter is attached hereto as Exhibit 23.

46. In a Payoff Statement dated January 27, 2017, SPS stated that the payment due date on the loan was March 1, 2012 and to total amount due under the Note and Mortgage was $100,737.78.  A true and accurate copy of the letter is attached hereto as Exhibit 24.

47. In a mortgage statement dated February 15, 2017 SPS alleged an "outstanding principal" balance of $64,823.54.  A monthly payment coupon was included.  A true and accurate copy of the statement is attached hereto as Exhibit 25.

48. SPS delivered a letter dated February 17, 2017 to Ms. Hazlett via her counsel stating that they needed another 15 days to provide a response to the January 20, 2017 letter.  A true and accurate copy of the letter is attached hereto as Exhibit 26.

49. In a letter dated February 23, 2017 from SPS to Ms. Hazlett, via her counsel, SPS claimed that they could not provide a different response from the November 24, 2016 letter previously delivered by Ms. Hazlett to SPS.  They again stated that "the terms of the mortgage remain in effect" and "the owner of the mortgage, as lien holder, continues to have a lien on the real property."  A true and accurate copy of the letter is attached hereto as Exhibit 27.

50. In a mortgage statement dated March 15, 2017, SPS alleged an "outstanding principal" balance of $64,823.54.  A monthly payment coupon was included.  A true and accurate copy of the statement is attached hereto as Exhibit 28.

51. SPS delivered to Ms. Hazlett, via counsel, a notice dated April 5, 2017 to provide "information regarding the lien on the real property."  SPS stated again that, "even

though your personal liability on the note may be discharged…the terms of the mortgage remain in effect.  The owner of the mortgage, as lien holder, continues to have a lien on the real property."  SPS alleged the loan was in default and provide several options including a loan modification, repayment plan, and short payoff of the loan to "satisfy the account." SPS further stated that "you are still obligated to make all future account payments as they come due…"  A true and accurate copy of the letter is attached hereto as Exhibit29.

52. In a mortgage statement dated April 13, 2017, SPS alleged an "outstanding principal" balance of $64,823.54.  A monthly payment coupon was included.  A true and accurate copy of the statement is attached hereto as Exhibit 30.

53. On April 13, 2017, SPS delivered a Notice of Default- Right to Cure letter to Ms. Hazlett, through counsel, stating ""even though your personal liability on the note may be discharged…the terms of the mortgage remain in effect.  The owner of the mortgage, as lien holder, continues to have an enforceable lien on the real property."  SPS alleged $40,236.13 was needed to cure the default and required to satisfy the lien on the property. A true and accurate copy of the statement is attached hereto as Exhibit 31.

54. Upon information and belief, SPS does not have policies and procedures in place to properly process a lien that is avoided in bankruptcy.

55. Upon information and belief including published Court decisions, SPS has attempted to collect on debts discharged in bankruptcy for other debtors in Maine and nationwide.

56. Upon information and belief including published Court decisions, SPS has engaged in a pattern of practice of failing to properly investigate and take corrective action on notices of errors received by consumers.

57. The letters that were delivered to Ms. Haslett's counsel were provided to her shortly after receipt.

58. With each letter, Ms. Hazlett felt more and more nervous and concerned that SPS truly believed she owed the money.  She knew she had done everything she was supposed to do in her bankruptcy and was relieved and eager to move forward when she completed her plan.  However, after her counsel provided SPS with a copy of the recorded lien avoidance TWICE and they still continued to insist the lien remained on the property and she would have to pay over $100,000 to remove it, she became distressed.  She began to wonder if something had gone wrong with her bankruptcy.  She felt like SPS may not ever stop until she paid the money they said she owed and there was no way for her to come up with that amount of money.

59. Ms. Hazlett felt especially harassed and upset when SPS delivered the April 13, 2017 Cure letter stating that if she did not pay the money SPS could initiate a foreclosure action on the property.  Ms. Hazlett lives in the property with her son.  This is their home. She is current on the first mortgage.  She had fought for over five years to save her home and thought she was done.  The threat of having a sheriff come and serve her with a foreclosure complaint and having to fight SPS in Court for a wrongful foreclosure made Ms. Hazlett extremely anxious and distressed.

**CLAIMS**

**COUNT ONE: VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION, 11 U.S.C. § 524**
**(US BANK AND SPS)**

60. The Plaintiff realleges and incorporate the preceding paragraphs as if fully set out herein.

61. Defendants' conduct violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105, a discharge that Defendants had actual knowledge of and were notified of on multiple occasions.

62. Ms. Hazlett's chapter 13 plan was clear.  It stated "Value of collateral is insufficient to support the second mortgage claim to EMC Mortgage. Said claim is completely unsecured and will be treated as a general unsecured creditor. Second mortgage is stripped off property and discharged." *See* Exhibit 2.

63. Despite objection from U.S.Bank, the Plan was confirmed on an interim basis on December 14, 2011.  Final confirmation was to be addressed per the Motion to Allow and Disallow Claims. *See* Exhibits 3, 4 and Bankruptcy docket entry no. 16.

64. Ms. Hazlett objected to U.S. Bank's claim no. 6, the second mortgage on the property, in her Motion to Allow and Disallow claims on March 13, 2012.  With the Motion, she provided a draft Order Avoiding Lien on Real Property.   The Motion was provided to EMC and US Bank.  *See* Exhibit 6.

65. EMC and counsel for U.S. Bank were provided notice of the interim confirmation.  *Id.*

66. On July 6, 2012, the Court Ordered that U.S. Bank's claim of the second mortgage would be treated as an unsecured claim and then, upon discharge of the bankruptcy, a separate Order would enter avoiding the lien.  EMC and U.S. Bank and their counsel were provided notice of the Order.  *See* Exhibit 7.

67. On July 27, 2016, the Court ordered avoidance of U.S. Bank's second lien on the property.  Chase and counsel for U.S. Bank received notice of the Order.  *See* Exhibit 8.

68. The Order Avoiding Lien on Real Property was recorded in the York Country Registry of Deeds on August 12, 2016, Bk 17297, Pg 365.  *See* Exhibit 9.

69. On September 12, 2016 the Court granted Ms. Hazlett's motion for discharge and an Order Discharging Debtor entered.  EMC, Chase, U.S. Bank and counsel for U.S. Bank received notice of the discharge. *See* Exhibits 10, 11.

70. SPS took over servicing of the loan on October 1, 2016.

71. Upon information and belief, SPS had notice of Ms. Hazlett's bankruptcy upon acceptance of servicing of the loan.

72. Ms. Hazlett provided SPS information regarding her bankruptcy over the phone on or around October 26, 2016.

73. Ms. Hazletts provided SPS with information about her bankruptcy discharge and avoidance of the second mortgage in a letter dated October 26, 2016.  With the letter, she included copies of the notice of her bankruptcy filing, the discharge order, the Order Allowing and Disallowing Claims, and the recorded Order Avoiding Lien.  *See* Exhibit 15.

74. SPS acknowledged that Ms. Hazlett's personal obligation under the loan had been discharged but asserted that terms of the mortgage remain in effect and that the lien remained on the property.  *See* Exhibit 19.

75. SPS also continued to send mortgage statements alleging an unpaid principal balance and notices. *See* Exhibits 17, 20, 21, 25, 28, 30.

76.  Ms. Hazlett delivered a second letter to SPS dated January 20, 2017 with information about her bankruptcy discharge and avoidance of the second mortgage and again included copies of the notice of her bankruptcy filing, the discharge order, the Order Allowing and Disallowing Claims, and the recorded Order Avoiding Lien.  *See* Exhibit 23.

77. SPS responded with the same inaccurate conclusion that the lien remained on the

property and the terms of the mortgage remain in effect.  *See* Exhibit 27.

78. Based on their erroneous conclusion that the lien remained on the property, SPS delivered notices regarding loss mitigation options such as loan modifications, payment deferral, and repayment plan options to address the alleged delinquency on the loan.  *See* Exhibits 29, 31.

79. Recently, SPS delivered a Notice of Default-Right to Cure letter alleging $40,236.13 needed to "cure" the alleged deficiency and stated that SPS may initiate foreclosure if the amount is not paid. *See* Exhibit 31.

80. SPS services the loan for U.S. Bank, as owner and/or holder of the loan.

81. SPS services the loan under the authority and control of U.S. Bank under the terms of a Pooling and Servicing Agreement.

82. U.S. Bank had actual notice of the bankruptcy, discharge, and avoidance of the lien yet has allowed SPS to continue to service the loan as if the lien was never avoided.

83. U.S. Bank is liable for SPS's conduct in servicing the loan under its authority and control.

84. SPS has continued to deliver notices alleging a lien still exists, that the mortgage terms are still in effect, that there remains an unpaid principal balance, and that if Ms. Hazlett fails to pay $40,236.13, she will be at risk of foreclosure of her home.

85. SPS has engaged in this conduct despite notice and knowledge of the bankruptcy upon acceptance of servicing of the loan and actual notice of the bankruptcy and avoidance of the lien from Ms. Hazlett and her counsel.

86. SPS's continued misrepresentations of the status of the second mortgage, amounts due, and the terms of the mortgage served to harass and coerce Ms. Hazlett.

87. While Ms. Hazlett believed the bankruptcy stripped off the second mortgage, when she

received repeated notices from SPS alleging that the lien was still in place and the terms

of the mortgage remained, she became increasingly nervous, anxious, and distressed.

88. Ms. Hazlett had fought for years to save her home for her and her son.  When she

received her discharge, she thought she finally could rest easy knowing she could afford

to remain in their home.  However, when SPS represented that the lien was still in place,

Ms. Hazlett began to have doubt.  When, after two letters from her attorneys, SPS sent a

letter stating she owed over $40,000 and that if she did not pay, she could face

foreclosure, Ms. Hazlett worried that SPS would continue to try and collect that money

until she paid, which she could not do and knew she would not be able to do based on her

income. She also became distressed that she would have to continue to fight for her home

after just completing a five-year process to save it.

89. Defendants' violations of 11 U.S.C. § 524 include, misrepresenting that the lien remained

on the property, representing an outstanding amount on the principal balance of the loan,

representing that the mortgage terms remained in effect, and representing that the loan

was in default and that over $40,000 all in an attempt to collect on the second mortgage

loan that was discharged in Ms. Hazlett's bankruptcy.

90. SPS deprived Ms. Hazlett of her "fresh start" as contemplated by the Code.

91. Defendants' conduct toward Ms. Hazlett was unfair, coercive, harassing, willful, and

knowing.

92. As a result of the conduct and actions of Defendants, Ms. Hazlett has suffered actual

damages including, without limitation, emotional and mental distress as described above.

93. Defendants' actions demonstrate willful and intentional violation of 11 U.S.C. § 524.

94. SPS was repeatedly informed of its misconduct but failed to take any corrective action.

95. Plaintiffs are entitled to recover from Defendants U.S. Bank and SPS actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §§ 524 and 105, and such other and further relief as this Court deems just and proper.

**COUNT TWO: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §1692e(8) AND MAINE FAIR DEBT COLLECTION PRACTICES ACT, 32 M.R.S.A. §11013(2)(H)**

**(SPS)**

96. The Plaintiff realleges and incorporate the preceding paragraphs as if fully set out herein.

97. SPS is a debt collector pursuant to 15 U.S.C. §1692a and 32 M.R.S.A. §11012.

98. The alleged debt at issue is a consumer debt pursuant to 15 U.S.C. §1692a and 32 M.R.S.A. §11012.

99. As detailed above, SPS has violated the FDCPA including but not limited to:

   a. 15 U.S.C. §1692c(a)(2) and 32 M.R.S.A. §11012(1)(B) by communicating in its letter dated October 12, 2016 and Mortgage Statement dated November 14, 2016 directly with Mrs. Hazlett about the alleged lien and loan when SPS knew the consumer was represented by an attorney;

   b. 15 U.S.C. §1692d and 32 M.R.S.A. §11013(2) by providing notices and mortgage statements alleging that a lien for the second mortgage exists on the property, the terms of the mortgage are still in effect, there is an unpaid principal balance on the loan, the loan is delinquent, and if Ms. Hazlett does not cure the delinquency she will face foreclosure all of which served to harass Ms. Hazlett;

   c. 15 U.S.C. §1692e and 32 M.R.S.A. §11013(1) by using false, deceptive, and

misleading representations in its notices and statements in an attempt to collect money from Ms. Hazlett that had been discharged on a lien that had been avoided. Specifically:

 i. 15 U.S.C. §1692e(2) and 32 M.R.S.A. §11013(2)(B): falsely representing the character, amount, and legal status of the alleged debt

 ii. 15 U.S.C. §1692e(4) and 32 M.R.S.A. §11013(2)(D): falsely representing that the nonpayment of the debt will result in foreclosure of her home;

 iii. 15 U.S.C. §1692e(5) and 32 M.R.S.A. §11013(2)(E):threatening to foreclose on the property when such action could not be legally taken

 iv. 15 U.S.C. §1692e(8) and 32 M.R.S.A. §11013(2)(H): on each monthly mortgage statement, threatening to communicate with credit reporting agencies for failure to fulfill the terms of the Note and Mortgage;

 v. 15 U.S.C. §1692e(10) and 32 M.R.S.A. §11013(2)(J): the use of false representations (status of lien and mortgage, principal balance, amounts owed) to collect the debt; and

d. 15 U.S.C. §1692f and 32 M.R.S.A. §11013(3): using unfair means to attempt to collect the alleged debt including but not limited to attempting to collect a debt not authorized by any agreement (15 U.S.C. §1692f(1) and 32 M.R.S.A. §11013(3)(A).

100. Ms. Hazlett suffered actual damages in the form of emotional distress that is directly traceable to defendant's conduct, and is likely to be redressed by a favorable decision in this action.

101. As a result of the above violations, SPS is liable to Ms. Hazlett in the sum of her

actual damages, statutory damages, costs and attorney's fees.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; for their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted
**Tricia Hazlett,**
By their attorneys:


/s/ Andrea Bopp Stark
Andrea Bopp Stark
Molleur Law Office
419 Alfred Street
Biddeford, ME  04005-3747
207-283-3777
andrea@molleurlaw.com


Gary Goldberg
Terry Garmey & Associates
482 Congress Street, Suite 402 |
Portland, ME  04101-3424
(207) 899-4644 ext 2336
ggoldberg@garmeylaw.com


Date:  May 16, 2017